## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Joel G. MacMull, Esq.
Arla Cahill, Esq.
**MANDELBAUM BARRETT PC**
570 Lexington Avenue, 21st Floor
New York, New York 10022
Tel.: 973-736-4600
Email: jmacmull@mblawfirm.com
         acahill@mblawfirm.com

*Attorneys for Plaintiff Alexander Heid*

| | |
|---|---|
| ALEXANDER HEID, an Individual, | CIVIL ACTION NO. |
| *Plaintiff*, | 25-cv-1734 |
| – vs. – | |
| SECURITYSCORECARD INC., a Delaware Corporation, and ALEKSANDR YAMPOLSKIY, an Individual, | |
| *Defendants*. | |

## PLAINTIFF ALEXANDER HEID'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO STRIKE OR DISMISS DEFENDANTS' COUNTERCLAIMS AND CERTAIN AFFIRMATIVE DEFENSES

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ..................................................................................... 2

   I.   The Complaint ................................................................................................ 2

      A.   Heid's Professional Background and Employment with SSC. ...................................... 2

      B.   SSC's Termination of Heid's Employment and Agreement to Extend the Time Period for Heid's Exercise of his Stock Options..................................................................3

      C.   SSC's Unauthorized Use of Heid's Likeness for Economic Benefit.............................. 4

      D.   Heid's Written Demand for SSC to Cease and Desist Its Unauthorized Use of Plaintiff's Likeness. ........................................................................................5

      E.   Defendants' Unlawful Retaliation Against Heid. ........................................................5

   II.   Defendants' First Amended Answer with Counterclaims. ................................................. 6

ARGUMENT ................................................................................................... 9

   I.   THE FACTUAL "BACKGROUND" SECTION OF THE COUNTERCLAIMS SHOULD BE STRICKEN PURSUANT TO FED. R. CIV. P. 12(f). ...................................... 9

   II.   DEFENDANTS' FIRST, THIRD AND FOURTH COUNTERCLAIMS FAIL TO MEET THE FACTUAL PLAUSIBILITY STANDARD, AND THUS SHOULD BE STRICKEN PURSUANT TOFED. R. CIV. P. 12(b)(6)..........................................................12

      A.   The First Counterclaim Is Not Plausible on its Face ................................................... 13

      B.   The Third Counterclaim Is Not Plausible on its Face ................................................... 14

      C.   The Fourth Counterclaim Is Not Plausible on its Face ................................................. 15

III.    THE FIRST AND THIRD COUNTERCLAIMS SHOULD BE STRICKEN OR DISMISSED BECAUSE THEY ARE DUPLICATIVE BREACH OF CONTRACT CLAIMS ARISING UNDER THE PARTIES' SEPARATION AGREEMENT....................................18

IV.    DEFENDANT'S BOILERPLATE AFFIRMATIVE DEFENSES FAIL TO MEET THE FACTUAL PLAUSIBILITY STANDARD, AND THUS SHOULD BE STRICKEN PURSUANT TO FED. R. CIV. P. 12(f)....................................................................................19

CONCLUSION ........................................................................................................... 20

4917-4416-1357, v. 4

# TABLE OF AUTHORITIES

*Page(s)*

***Cases***

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ....................................................................................7, 13, 14

*Bell Atl. Corp. v. Twombly,*
    550 U.S 544 (2007) ............................................................................... 7, 13, 14, 21

*Erickson Beamon Ltd. v. CMG Worldwide, Inc.,*
    No. 12-cv-5105, 2014 WL 3950897 (S.D.N.Y. Aug. 13, 2014) .................................10

*Fin. Freedom Senior Funding Corp. v. Bellettieri, Fonte & Laudonio, P.C.,*
    852 F.Supp.2d 430 (S.D.N.Y.2012)........................................................................ 20

*GEOMC Co. v. Calmare Therapeutics Inc.,*
    918 F.3d 92 (2d Cir. 2019) ................................................................................. 7, 21

*Global View Ltd. Venture Capital v. Great Central Basin Exploration, L.L.C.,*
    288 F.Supp.2d 473 (S.D.N.Y. 2003) .......................................................................10

*Harris v. Mills,*
    572 F.3d 66 (2d Cir.2009)...................................................................................... 13

*Jefferies Strategic Investments, LLC v. Weiss,*
    No. 24-cv-4369, 2025 WL 786578 (S.D.N.Y. Mar. 12, 2025) ...........................21, 22

*Kassner v. 2nd Ave. Delicatessen, Inc.,*
    496 F.3d 229 (2d Cir. 2007)................................................................................... 13

*Newton v. Rumery,*
    480 U.S. 386 (1987) .............................................................................................. 15

*Matter of O'Hara,*
    85 A.D.2d 669, 445 N.Y.S.2d 201 (2d Dept. 1981) .................................................. 15

*Orientview Techs. LLC v. Seven For All Mankind, LLC,*
    No. 13-cv-0538, 2013 WL 4016302 (S.D.N.Y. Aug. 7, 2013)................................... 13

*Perry v. Merit Sys. Prot. Bd.,*
    582 U.S. 420 (2017) ..........................................................................................15, 17

*In re Refco Inc. Securities Litig.,*
    No. 08-cv-3065, 2012 WL 3126834 (S.D.N.Y. July 30, 2012) ................................. 22

4917-4416-1357, v. 4

*Shaub & Williams, L.L.P. v. Augme Techs., Inc.*,
  No. 13-cv-1101, 2014 WL 625390 (S.D.N.Y. Feb. 14, 2014)...................................................20

*Trs. of the N.Y. City Dist. Council v. MCF Assocs.*,
  530 F. Supp. 3d 460 (S.D.N.Y. 2021) ........................................................................22

*Williams v. Calderoni*,
  2012 WL 691832 (S.D.N.Y. Mar. 1, 2012)...............................................................22

*Winklevoss Capital Fund, LLC v. Shrem*,
  351 F. Supp. 3d 710 (S.D.N.Y. 2019) .......................................................................10

**Treatises**

1A American Law of Torts, *Compromises, Settlements, and Release*s, § 5:46(c) ............................14

19 N.Y. Jur 2d, *Compromise, Accord, and Release*, § 85 ................................................14

**Court Rules**

Fed. R. Civ. P. 8(a).............................................................................................13

Fed. R. Civ. P. 8(c)(1) .....................................................................................15, 17

Fed. R. Civ. P. 12(b)(6) ..............................................................................1, 13, 14

Fed. R. Civ. P. 12(f) ...........................................................................7, 9, 10, 21

4917-4416-1357, v. 4

Plaintiff Alexander Heid ("Plaintiff" or "Heid") respectfully submits this memorandum of law in support of his motion to dismiss or strike counterclaims filed on behalf of defendants SecurityScorecard, Inc. ("SSC") and Aleksandr Yampolskiy ("Yampolskiy") (collectively, "Defendants") pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f) and to further dismiss or strike certain affirmative defenses as identified herein.

## PRELIMINARY STATEMENT

Plaintiff has brought this action to address Defendants' unlawful use of Heid's name, image and likeness ("Likeness"), and use of his misappropriated Likeness to target consumers and induce them to purchase SSC's services or otherwise generate revenues for the benefit of SSC. Defendants' scheme centered around unlawfully using Heid's Likeness in connection with their H.E.I.D. AI initiative which they marketed extensively in 2024. Defendants did, notwithstanding their knowledge of Heid's preexisting rights, establish and promote an artificial intelligence offering under the guise of H.E.I.D. AI that wrongfully utilized Heid's Likeness, and that, as consequence of Defendants' actions, took the form of various advertisements at or in connection with large national conferences in 2024, including, but not necessarily limited to, the 2024 RSA Conference and Black Hat USA 2024.

Following receipt of Heid's demand letter on June 6, 2024 wherein, *inter alia*, Heid demanded an immediate cease and desist of the unauthorized use of his Likeness as well as an accounting concerning any and all actions taken vis-à-vis his Likeness, Defendants engaged in retaliation against Heid by expediting the initial timeframe by which he must exercise his vested stock options which was contrary to earlier representations made to him.

In response to Plaintiff's allegations, Defendants filed a vexatious four-count counterclaim with their Amended Answer, which improperly advances contract defenses erroneously denominated as affirmative claims seeking damages against Plaintiff.

As explained below, Defendants' claims are, for the most part, subject to dismissal. So too are certain of their affirmative defenses which, despite being on notice of their infirmity, Defendants have failed to sufficiently plead.

## STATEMENT OF FACTS

I.  **The Complaint**

A.  **Heid's Professional Background and Employment with SSC.**

Plaintiff was the former Chief Research & Development Officer at SSC and, during the relevant period, was a resident of the State of Florida. (ECF 1, hereinafter "Compl." ¶6.)  At all relevant times hereto, SSC is a Delaware corporation with a principal place of business in New York. (*Id.*, ¶7.)  Yampolskiy is the Chief Executive Officer and Co-Founder of SSC. (*Id.*, ¶8.)

Plaintiff has been in the cybersecurity services industry since 2009. (*Id.*, ¶14.) Prior to joining SSC in or about November 2013, Plaintiff worked as a senior cybersecurity engineer with a distributed denial-of-service mitigation firm. (*Id.*, ¶15.)  He is an acclaimed cyber-security professional and has a valued reputation in the industry because he possesses a skillset that is highly desirable. (*Id.*, ¶16.)

By way of example, but not limitation, Plaintiff is credited as being one of the first researchers to attribute the Equifax data breach of 2017 to a vulnerability in the open-source web application Apache Struts 2. (*Id.*, ¶17.)  For this reason, as well as others, Plaintiff monitors content on the Internet concerning himself or his Likeness. (*Id.*, ¶18.)

Plaintiff has also established goodwill with the clients and agents he has engaged with over

the years. (*Id.*, ¶19.)  The goodwill established by Heid has substantial economic value.  (*Id.*, ¶20.)

For approximately ten years until March 2024, Heid was the Chief Research and Development Officer as SSC. (*Id.*, ¶21.)  As part of SSC's business, it advertises in a number of different communicative mediums including, but not limited to, the Internet. (*Id.*, ¶22.)  As a part of SSC's business, it maintains an Internet website at the following location https://securityscorecard.com/ ("Website"). It is believed that SSC is the owner of the Website. (*Id.*, ¶23.)

### B. SSC's Termination of Heid's Employment and Agreement to Extend the Time Period for Heid's Exercise of his Stock Options.

In or about March 2024, SSC terminated Plaintiff's employment.  (*Id.*, ¶24.)

Plaintiff was a beneficiary of a certain written Stock Option Grant Agreement (the "Grant Agreement") entered into with SSC as of May 14, 2015. (*Id.*, ¶55.)  Among other things, the Grant Agreement granted Plaintiff, referred to in the Grant Agreement as "Optionee," the option to purchase Common Stock of SSC (hereafter, referred to as "Options"), subject to the vesting schedule specified by the Grant Agreement, among other terms and conditions of a certain 2013 Equity Incentive Plan and the Grant Agreement.  (*Id.*, ¶56.)

The Grant Agreement provided, among other things, that the Option "shall terminate and be canceled to the extent not exercised within ninety (90) days after the Optionee ceases to be a Service Provider," except in the case of death or termination of service for "cause." (*Id.*, ¶57.) Plaintiff's cessation of employment with SSC was neither due to death nor for cause.  (*Id.*, ¶58.)

In consideration for recognition of Plaintiff's substantial contributions to the ongoing success of SSC, Plaintiff requested that SSC permit Plaintiff to exercise his Option within twelve (12) months of his termination from SSC.  (*Id.*, ¶59.)  In or about May 2024, Plaintiff exchanged

several emails with SSC's General Counsel, Owen Denby ("Denby"), about Plaintiff's request for an extension of the Option deadline. (*Id.*, ¶60.) Denby had actual and/or apparent authority to bind SSC. (*Id.*, ¶61.)

> By email dated May 13, 2024, Denby wrote to Plaintiff on behalf of SSC as follows:
>
>> Apologies again for the delay. I've spoken to our Equity team and the 1 year extension should be updated and reflected in Shareworks later this week.
>>
>> Any questions about exercising mechanics can be directed to the equity@securityscorecard.io inbox and someone from that team will be able to assist.

(*Id.*, ¶62.)

Plaintiff relied upon SSC's agreement to extend the Option exercise period for a total of twelve (12) months, until April 1, 2025 (the "Extension"). (*Id.*, ¶63.) The Extension was an enforceable amendment to the Grant Agreement supported by valid consideration. (*Id.*, ¶64.)

**C.  SSC's Unauthorized Use of Heid's Likeness for Economic Benefit.**

In or about early May 2024, which was after Plaintiff's termination of employment with SSC, Plaintiff learned that SSC had advertised its services for its "HEID AI" solution on its Website. (*Id.*, ¶25.)  The text of the advertisement reads "HEID AI turns billions of events observed from across the internet into actionable insights."  (*Id.*)  In addition to bearing the last name of Plaintiff, the advertisement included an unmistakable photograph of Plaintiff's face, altered to appear as though Heid is of non-human, i.e., robotic, origin.  (*Id.*, ¶¶ 26-27; Figure 1.) Indeed, the source of the photograph in the advertisement was the same photograph that appeared on SSC's "Leadership" webpage that, until approximately March 27, 2024, publicly displayed Plaintiff on its Website. (*Id.*, ¶28; Figure 2.)  Plaintiff is the only named cyber-security professional in the United States utilizing the "Heid" name. (*Id.*, ¶29.) The advertisement was accessible on

SSC's Website from approximately May 2024 and for a period of time thereafter, for which Defendants were responsible.  (*Id.*, ¶¶25, 30.)

SSC also engaged in the act of animating Plaintiff's Likeness, including at a 2024 RSA Conference held in San Francisco, California. (*Id.*, ¶31.) Images of Plaintiff displayed by SSC at the 2024 RSA Conference, as well as other images depicting Plaintiff's name and Likeness in connection with SSC's advertising for the conference, are depicted in the Complaint at Figures 3, 4 and 5. (*Id.*, ¶32.) SSC's unauthorized use of Plaintiff's Likeness to promote its HEID AI offering is likely to confuse consumers in the marketplace, including, without limitation, causing them to believe that Plaintiff endorses, sponsors, promotes or is otherwise affiliated with SSC and its products and/or services when he is not.  (*Id.*, ¶33.)

### D.  Heid's Written Demand for SSC to Cease and Desist Its Unauthorized Use of Plaintiff's Likeness.

By letter dated June 6, 2024, Plaintiff's attorney placed SSC on notice that SSC was unlawfully using Plaintiff's Likeness in connection with its public promotion and advertisement of HEID AI and demanded that SSC cease and desist from its unlawful conduct (the "Demand Letter").  (*Id.*, ¶65.)

### E.  Defendants' Unlawful Retaliation Against Heid.

In retaliation for the Demand Letter, in the days that followed, Yampolskiy sent multiple threatening texts to Plaintiff, wherein he stated, *inter alia*, "I can always claw back your shares" and "[w]ould you prefer us to do it[?]" (*Id.*, ¶66.)

Upon information and belief, after receiving the Demand Letter and in retaliation therefore, Yampolskiy wrongfully directed SSC to terminate the Extension. (*Id.*, ¶67.)  After receiving the Demand Letter and in retaliation therefore, SSC wrongfully and unilaterally

terminated the Extension.  (*Id.*, ¶68.)

After receiving the Demand Letter and in retaliation therefore, Defendants imposed a new deadline of July 31, 2024 upon Plaintiff by which he had to exercise his Option. (*Id.*, ¶70.) As a result of the foregoing, Plaintiff has sustained damages by being forced prematurely to exercise his Option, thereby causing him to incur economic losses.  (*Id.*, ¶71.)

Based upon these allegations, Plaintiff sued Defendants for the unauthorized use of his Likeness in violation of § 540.08, Florida Statute, violation of the New York State Civil Rights Law §§ 50 and 51, invasion of privacy for the unauthorized use of his name or likeness to obtain benefit under Florida Common Law, and breach of SSC's Stock Option Grant Agreement dated May 14, 2015.  (*See generally*, Compl.)

## II.    Defendants' First Amended Answer with Counterclaims.

On April 16, 2025, Defendants filed an initial Answer, Affirmative Defenses and Counterclaims. (ECF 14.)  In response to that pleading, counsel for Plaintiff wrote Defendants a detailed email on April 22, 2025, wherein, *inter alia*, and citing to on-point legal authorities, it alerted Defendants to (i) the pleading defects in their Answer; (ii) Plaintiff's anticipated motion to strike and to dismiss Defendants' counterclaims; and (iii) Plaintiff's intention to amend its pleadings.  (*See* Declaration of Joel G. MacMull dated June 11, 2024 ("MacMull Decl.") at ¶ 3, Ex. 1.) More specifically, Plaintiff addressed the infirmity of the counterclaims on grounds the allegations were immaterial, impertinent or scandalous and, therefore, were susceptible to being stricken pursuant to Fed. R. Civ. P.  12(f). (*See id.*) Plaintiff's counsel's email also advised Defendants that their affirmative defenses, which were entirely unadorned with any factual detail whatsoever, failed to comport with *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92 (2d Cir. 2019), which holds that boilerplate affirmative defenses that fail to meet the basic pleading

6

requirements set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S 544, (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) should be dismissed. (*See id*.) Finally, the email explained that Defendants' affirmative claims as plead were instead affirmative defenses as a matter of law. (*See id*.)

On April 23, 2025, in recognition of the shortcomings with their initial Answer, Defendants advised that they would be amending their pleading. (*See id*.) Following a meet and confer with Plaintiff's counsel, Defendants filed a First Amended Answer with Counterclaims on May 16, 2025. (*See generally*, ECF 15.) The Amended Answer asserts four counterclaims (collectively, the "Counterclaims") as follows:

- First Counterclaim—Breach of Separation Agreement: Section 11 "Release of All Claims"

- Second Counterclaim—Breach of Separation Agreement: Section 10 "Non-Disparagement"

- Third Counterclaim—Breach of Separation Agreement: Section 12 "No Actions or Claims"

- Fourth Counterclaim—Breach of Assignment Agreement

(*See id*.)

The Counterclaims are deficient for several reasons. First, the Counterclaims are preceded by a purported factual "Background" section that allege "facts" that are neither responsive nor relevant to the action as a whole, and are, in fact, impertinent and immaterial to the issues underlying the Counterclaims, if not outright scandalous.

Second, the Counterclaims should be stricken because they are mislabeled as counterclaims when, in reality, they are merely contract defenses that improperly seek damages from Plaintiff. Notwithstanding the mislabeling of the Counterclaims, they should be dismissed because there is no factual content alleged in the Counterclaims that allows this Court to draw the reasonable

inference that Defendants have alleged a legally enforceable right to relief to hold Plaintiff liable for damages to Defendants under any of the parties' agreements.

Third, the First, Second and Third Counterclaims are improperly duplicative because they arise out of the same set of facts pertaining to the same contract.

Defendants' Amended Answer generally denies the allegations in the Complaint. (*See* ECF 15, Answer.) The Answer also asserts seven affirmative defenses, including the following four boilerplate affirmative defenses which are the subject of this motion:

- Second Affirmative Defense: Upon information and belief, Plaintiff has not suffered any emotional pain or suffering, mental anguish, humiliation, embarrassment, personal indignity, or other harm relating to the activity alleged in paragraphs 14 through 71 of Plaintiff's Complaint. Accordingly, Plaintiff's claims against SSC Inc. and AY are barred, in whole or in part, because Plaintiff has suffered no injury in fact as a result of any acts or failures to act by SSC Inc. or AY.

- Third Affirmative Defenses: Upon information and belief, Plaintiff seeks damages of which there is no causal nexus to the alleged liability. Accordingly, Plaintiff's claims against SSC Inc. and AY are barred, in whole or in part, to the extent Plaintiff seeks damages that are speculative and uncertain.

- Sixth Affirmative Defense: Plaintiff's claims against SSC Inc. and AY are barred, in whole or in part, by laches, equitable estoppel, acquiescence, ratification, waiver, and/or other equitable doctrines.

- Seventh Affirmative Defense: SSC Inc. and AY currently has insufficient knowledge or information upon which to form a belief as to any other potential

defenses that may be available to it and expressly reserves the right to amend or supplement this Answer and affirmative defenses, as well as to assert any and all additional or alternative defenses under any applicable state or federal law or regulations, in the event that discovery indicates that such defenses are available. SSC Inc. and AY also reserve the right to assert any cross-claims, counterclaims, and third-party claims in the event that discovery indicates such claims are available

(ECF 15, Affirmative Defenses, ¶¶ 82-85, 90-91.) None of the foregoing four affirmative defenses are accompanied by any supporting allegations of fact.

Taken as a whole, Defendants' allegations of irrelevant and immaterial "facts" and mislabeling of affirmative defenses as purported counterclaims constitute an obvious effort to "double down" on Plaintiff to drive up his costs of litigation unnecessarily. And their affirmative defenses unadorned by any facts are equally flawed. Defendants' improper pleading, therefore, warrants dismissal or being stricken as a matter of law, for the reasons explained below.

## ARGUMENT

## I. THE FACTUAL "BACKGROUND" SECTION OF THE COUNTERCLAIMS SHOULD BE STRICKEN PURSUANT TO FED. R. CIV. P. 12(f).

Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "An allegation is 'impertinent' or 'immaterial' when it is neither responsive nor relevant to the issues involved in the action." *Erickson Beamon Ltd. v. CMG Worldwide, Inc*., No. 12-cv-5105, 2014 WL 3950897, at *2 (S.D.N.Y. Aug. 13, 2014) (citation omitted). Irrelevant allegations are stricken as scandalous if they degrade a party's moral character and do not contribute to any substantive claim. *See Global View Ltd. Venture Capital v. Great Central Basin Exploration, L.L.C.,* 288 F.Supp.2d 473, 480-81

9

(S.D.N.Y. 2003) (striking references to defendants as "unscrupulous, unprincipled con artists" since it amounts to nothing more than name calling, and fails to contribute to any substantive claim.)

"To prevail on a Rule 12(f) motion to strike, a party must demonstrate . . . (1) [that] no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Winklevoss Capital Fund, LLC v. Shrem*, 351 F. Supp. 3d 710, 721 (S.D.N.Y. 2019) (alteration and internal quotation marks omitted). Here, these conditions are easily satisfied.

Paragraphs 6-11 of the "Background" section of Defendants' Counterclaims should be stricken because the disparaging and superfluous allegations have no bearing on or relevance to the Counterclaims. (ECF 15, Counterclaims, ¶¶6-11, 18.) For instance, Paragraphs 6-10 of the Counterclaims allege, "[u]pon information and belief," irrelevant and immaterial allegations concerning Plaintiff's purported use of the pseudonym, "Jake Newman," on social media platforms to convey "highly offensive and derogatory" material, but which have no bearing on the issues in this case.[1] (*Id.*, Counterclaims, ¶¶7-8.) They further allege that "over the years" SSC and unidentified third parties thought Plaintiff was "erratic and unstable," "medicates himself with heavy drugs" and sought "police and legal protection." (*Id.*, Counterclaims, ¶¶9-10.) These allegations are patently gratuitous.

---

[1]    Indeed, SSC's own document production in this case underscores how truly meritless their claims are vis-à-vis Plaintiff's use of the pseudonym "Jake Newman." Following an internal investigation, SSC Director, Human Resources Business Partner, Courtney LaTurner, informed SSC's "Chief People Officer," Jeff Alvarez, in February 2024 that Heid's actions as Jake Newman were not "inflammatory" or "illegal," nor "insulting or threatening." (MacMull Decl., ¶ 4, Ex. 2.) Accordingly, for this reason too, Defendants' Fourth Affirmative Defense and paragraphs 6-8 of the Counterclaims should be dismissed or stricken.

Moreover, these allegations appear to suggest a rationale for SSC's termination of Plaintiff's employment when there are no claims advanced in the Complaint contesting his termination.  Such allegations, which are inherently self-serving, that purport to explain the basis for Plaintiff's termination of employment are entirely irrelevant and are plainly alleged for the improper purpose of maligning, and, therefore, prejudicing Plaintiff.  Insofar as each allegation is preceded by the phrase, "[u]pon information and belief," there is no evidence in support of the allegations that would be admissible.

Additionally, paragraph 11 of the Counterclaim further alleges self-serving and unfounded derogatory claims that Plaintiff contacted an unspecified number of unidentified SSC employees "numerous times" and "left incoherent and aggressive voicemails, threatening to extort, unduly coerce, and disparage SSC Inc. and its senior leadership . . . where Plaintiff appeared to sound heavily medicated or intoxicated." (*Id.*, Counterclaims, ¶11.)  These false and hyperbolic allegations similarly are without any evidence that would be admissible in this action, have no bearing on the issues in the case, and, therefore, to permit the allegations to stand would result in prejudice to Plaintiff.

Defendants were placed on notice of Plaintiff's objections to these characterizations and their lack of relevance to the instant matter as early as April 22, 2025. (MacMull Decl., ¶ 3, Ex. 1.) Yet, they persist in their public character assignation of Plaintiff, which is entirely improper. For these reasons, the allegations set forth in Paragraphs 6-11 should be stricken.

## II.    DEFENDANTS' FIRST, THIRD AND FOURTH COUNTERCLAIMS FAIL TO MEET THE FACTUAL PLAUSIBILITY STANDARD, AND THUS SHOULD BE STRICKEN PURSUANT TO FED. CIV. P. 12(b)(6).

To survive a motion to dismiss, "a [pleading] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). This standard requires that a party "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" (*id.*), and those factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.

Counterclaims must meet the pleading requirements of Rule 8(a), as interpreted by *Twombly* and *Iqbal,* in order to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See Orientview Techs. LLC v. Seven For All Mankind, LLC,* No. 13-cv-0538, 2013 WL 4016302, at *2 (S.D.N.Y. Aug. 7, 2013) ("A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint.") (quoting *Revonate Mfg., LLC v. Acer Am. Corp.,* No. 12-cv-6017, 2013 WL 342922, at *2 (S.D.N.Y. Jan. 18, 2013))). In considering counterclaims, the court accepts as true all factual allegations in the pleadings and draws all reasonable inferences in the non-moving party's favor. *See Harris v. Mills,* 572 F.3d 66, 71 (2d Cir.2009); *Kassner v. 2nd Ave. Delicatessen, Inc.,* 496 F.3d 229, 237 (2d Cir. 2007). Nevertheless, the counterclaimant's "[f]actual allegations must be enough to raise a right of relief above the speculative level." *Twombly,* 550 U.S. at 555; *see also Iqbal,* 556 U.S. at 678 (finding that a plaintiff's allegations must demonstrate "more than a sheer possibility that a defendant has acted unlawfully" in order to pass muster under Rule 12(b)(6)). If the counterclaimant has "not nudged [its] claims across the line from conceivable to plausible," the counterclaim must be dismissed. *Twombly,* 550 U.S. at 570.

This pleading standard applies to "all civil actions." *Iqbal,* 556 U.S. at 684 (internal quotation marks omitted).

Here, the First, Third and Fourth Counterclaims fail to satisfy the *Twombly* and *Iqbal* pleading standards as set forth more fully below.

### A.  The First Counterclaim Is Not Plausible on its Face.

With respect to the First Counterclaim for alleged breach of paragraph 11 of the parties' Separation Agreement, Defendants allege that Plaintiff knew, before his employment was terminated, that SSC intended to use the word "H.E.I.D." in an upcoming marketing campaign and that Plaintiff had this information when he signed the Separation Agreement on April 8, 2024. (ECF 15, Counterclaims, ¶¶13-18.) Notably, however, the First Counterclaim does not allege that SSC disclosed to Plaintiff that SSC intended to **use** Plaintiff's Likeness, i.e., his surname in conjunction with his photograph, in connection with its use of "H.E.I.D." as part of SSC's marketing campaign.

The First Counterclaim further alleges that, pursuant to Section 11 of the Separation Agreement, entitled "Release of All Claims," Plaintiff released Defendants from liability for their use of the word, "H.E.I.D.", and that by Plaintiff bringing his lawsuit, Defendants have been damaged.  (*Id.*, Counterclaim, ¶¶19-23.)

Under the *Twombly* standard, there is no basis upon which this Court can draw a reasonable inference that Defendants have alleged a legally enforceable right to relief to hold Plaintiff liable for damages under Section 11 of the Separation Agreement by virtue of Plaintiff's filing of the Complaint.  Specifically, even assuming for purposes of this motion only that Defendants' factual allegations are true, Defendants' pleadings fail to make out a legally cognizable cause of action for damages under a so-called "breach of release" theory.  In civil litigation, a release is an affirmative

defense to a plaintiff's claim for relief. *See Perry v. Merit Sys. Prot. Bd.*, 582 U.S. 420, 435 n.9, (2017) (citing Fed. R. Civ. P. 8(c)(1) (listing among enumerated affirmative defenses "release" and "waiver")); *Newton v. Rumery,* 480 U.S. 386, 391 (1987).[2]  It is clear that Defendants have erroneously asserted a cause of action when they should have denominated it as an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1).  It is improper for Defendants to assert an affirmative defense as an independent cause of action for damages.  Accordingly, the First Counterclaim should be dismissed for failure to state a claim.

### B.  The Third Counterclaim Is Not Plausible on its Face.

The Third Counterclaim suffers from the same defect as the First Counterclaim.  (ECF 15, Counterclaims, ¶¶29-33.)   Defendants allege in the Third Counterclaim that, by filing his Complaint, Plaintiff "breached" Section 12 of the parties' Separation Agreement, which provides as follows:

> You represent that you have not filed any charges, complaints, grievances, arbitrations, lawsuits, or claims against the Company, with any local, state or federal agency, union or court from the beginning of time to the date of execution of this Agreement and **that you will not do so at any time hereafter, based upon events occurring prior to the date of execution of this Agreement**. In the event any agency, union, or court ever assumes jurisdiction of any lawsuit, claim, charge, grievance, arbitration, complaint, or purports to bring any legal proceeding on your behalf, you will ask any such agency, union, or court to withdraw from and/or dismiss any such action, grievance, or arbitration, with prejudice.

(*Id.*, Counterclaims, ¶30; emphasis added).

---

[2]     Releases bar suits on causes of action arising on or prior to the date of their execution. *See Matter of O'Hara,* 85 A.D.2d 669, 671, 445 N.Y.S.2d 201, 204 (2d Dept. 1981); 19 N.Y. Jur 2d, *Compromise, Accord, and Release*, § 85, at 439.  A release operates as a discharge of the party released; it is an abandonment of a claim by one person to the person against whom the claim exists.  *See* § 5:46. *Compromises, Settlements, and Release*s, 1A American Law of Torts § 5:46(c).

Defendants further allege, "Plaintiff's Complaint, including Counts I-III, concern activities that occurred at least as early as August 2023, which pre-date the Separation Agreement." (*Id.*, Counterclaims, ¶31.) Thus, Defendants' Third Counterclaim appears to be based solely on the clause contained within Section 12 that states, in part ". . . based upon events occurring prior to the date of execution of this Agreement." (*Id.*, Counterclaims, ¶30.) Defendants further allege that, "[b]y bringing this lawsuit against SSC Inc., Plaintiff has willfully breached Section 12 of the Separation Agreement" and "has been damaged by that breach and will continue to suffer such damage . . . ." (*Id.*, Counterclaims, ¶¶32-22.)

Section 12 of the Separation Agreement concerning "events occurring prior to the date of execution of this Agreement," is tantamount to waiver and release language. But again, "release" and "waiver" are specific affirmative defenses set forth in Fed. R. Civ. P. 8(c)(1). Thus, even accepting Defendants' allegations as true for purposes of the present motion only, Defendants have still failed to allege a legally cognizable claim. *See Perry*, 582 U.S. at 435, n.9. Indeed, there is no factual allegation that allows this Court to draw the reasonable inference that Defendants have alleged a legally enforceable right to relief that holds Plaintiff liable for damages to Defendants under Section 12 of the Separation Agreement by virtue of Plaintiff's filing his Complaint. At best, just like the First Counterclaim, Defendants have merely alleged an affirmative defense to Plaintiff's Complaint.  They have not, however, asserted a separate, legally cognizable claim for damages against Plaintiff. Accordingly, the Third Counterclaim should be dismissed.

### C.  The Fourth Counterclaim Is Not Plausible on its Face.

The Fourth Counterclaim suffers from the same defect as the First and Third Counterclaims. (ECF 15, Counterclaims, ¶¶34-40.) Defendants allege in the Fourth Counterclaim that Plaintiff breached Section 6(b) of the Proprietary Information and Inventions and Non-

15

Competition Agreement dated July 18, 2014 (the "Assignment Agreement"), which provides, in relevant part, that "[Plaintiff] hereby assign[s] to [SSC Inc.] any rights I may have or acquire in Inventions." (*Id.*, Counterclaim, ¶36.)

Defendants further allege that the term "Invention" is defined in Section 1.3 of the Assignment Agreement as follows:

> [A]ll data, discoveries, designs, developments, formulae, ideas, improvements, inventions, know-how, processes, programs, and techniques, whether or not patentable or registrable under copyright, trademark or similar statutes, and all designs, trademarks and copyrightable works that I made or conceived or reduced to practice or learned, either alone or jointly with others, during the period of my employment which (a) are related or useful in the business of the Company or to the Company's actual or demonstrably anticipated research, design, development, experimental production, financing, manufacturing, licensing, distribution or marketing activity carried on by the Company, or (b) result from tasks assigned me by the Company, or (c) result from use of premises or equipment owned, leased or contracted for by the Company.

(*Id.*)

Defendants go on to allege that "Plaintiff learned along and jointly with others the intellectual property associated with SSC Inc.'s "H.E.I.D." marketing campaign by acknowledging the existence of the "H.E.I.D." marketing campaign, providing feedback as to the "H.E.I.D." marketing campaign, and approving the "H.E.I.D." marketing campaign." (*Id.*, Counterclaim, ¶37.) Defendants further allege that, "[b]y bringing this lawsuit against SSC Inc. and AY related to the "H.E.I.D." marketing campaign, Plaintiff breached the Assignment Agreement" and "SSC Inc. has been damaged." (*Id.*, Counterclaim, ¶¶39-40.)

But even accepting Defendants' allegations as true for purposes of the present motion only, Defendants have failed to allege a legally cognizable claim and the rationale for their purported breach of the Assignment Agreement is fundamentally flawed for at least a few reasons.

First, even assuming for purposes of this motion that the word, "H.E.I.D." or any variation thereof is an "Invention" defined in Section 1.3 of the Assignment Agreement, there is no allegation contained in the Counterclaims asserting that Plaintiff assigned his right to his Likeness to Defendants to be used in conjunction with the word, HEID or H.E.I.D. This is hardly surprising, considering that no such assignment ever took place.

Second, Defendants concede in the allegations comprising their First Affirmative Defense that the extent of Defendants' disclosure to Plaintiff about SSC's so-called marketing campaign was solely limited to the single word "HEID." (ECF 15, First Affirmative Defense, ¶¶72-80.) But insofar as Plaintiff's last name is "Heid," Defendants have no legally cognizable intellectual property claim over a former employee's surname. Put differently, Plaintiff's last name "Heid" is not an "invention" that can credibly be said to fall with the ambit of Section 1.3 of the Assignment Agreement.

Third, Defendants admit that they never disclosed any information to Plaintiff about the substance of SSC's marketing campaign other than the SSC's singular use of the word HEID. Thus, Defendants have failed to allege the existence of any intellectual property to which Plaintiff was privy or which Plaintiff disclosed to third parties. This too, illustrates Defendants' misuse of Section 1.3 of the Assignment Agreement as a vehicle hold Plaintiff liable.

Fourth, Defendants likewise have not alleged in the Fourth Counterclaim or anywhere else within their Amended Answer that Plaintiff violated Section 6(b) of the Assignment Agreement by financially benefitting from the use of SSC's intellectual property. Indeed, the so-called HEID advertising campaign was developed by SCC and was not an "invention" created by Plaintiff. Insofar as the inherent purpose of the Assignment Agreement is to protect SSC's interests in intellectual property, the Fourth Counterclaim fails to allege any facts about how SSC's

17

intellectual property rights have been harmed. To the contrary, the Complaint alleges that **Defendants violated** Plaintiff's rights, not the other way around.

It is patently clear that Section 6(b) of the Assignment Agreement has no relevance to this litigation. Indeed, there is no factual content alleged in the Fourth Counterclaim that allows this Court to draw the reasonable inference that Defendants have alleged a legally enforceable right to relief to hold Plaintiff liable in damages to Defendants under Section 6.2(b) of the Assignment Agreement simply by virtue of Plaintiff's filing of his Complaint. At best, just as with the First and Third Counterclaims, here Defendants have merely alleged another potential affirmative defense to Plaintiff's Complaint as a "Fourth Counterclaim," although such a defense would be specious given that there is no allegation that Plaintiff misused any intellectual property belonging to SSC.

Accordingly, for these reasons, the Fourth Counterclaim too should be dismissed.

## III.    THE FIRST AND THIRD COUNTERCLAIMS SHOULD BE STRICKEN OR DISMISSED BECAUSE THEY ARE DUPLICATIVE BREACH OF CONTRACT CLAIMS ARISING UNDER THE PARTIES' SEPARATION AGREEMENT.

Under New York law, claims that arise from the same set of facts and do not allege distinct damages are duplicative of one another. *See Fin. Freedom Senior Funding Corp. v. Bellettieri, Fonte & Laudonio, P.C.*, 852 F.Supp.2d 430, 435–36 (S.D.N.Y.2012) (quoting *NetJets Aviation, Inc. v. LHC Commons, LLC*, 537 F.3d 168, 175 (2d Cir.2008)). Accordingly, courts will strike duplicative counterclaims. *Shaub & Williams, L.L.P. v. Augme Techs., Inc.,* No. 13-cv-1101, 2014 WL 625390, at *3 (S.D.N.Y. Feb. 14, 2014).

Here, Defendants' First, Second and Third Counterclaims arise from the alleged breaches of Sections 10, 11 and 12 of the same contract, i.e., the parties' April 8, 2024 Separation Agreement, and do not allege distinct damages. Although Plaintiff's motion does not seek relief with regard to the Second Counterclaim, Defendants' efforts to "guild the lily" with multiple purported claims

for breach of contract under the First and Third Counterclaims arising out of the same contract is improper because these Counterclaims arise from the same set of facts upon which Defendants' three breach of contract Counterclaims are based. Accordingly, if the First and Third Counterclaims are not dismissed for the reasons set forth in Point II, *supra*, they should be merged with the Second Counterclaim to avoid unnecessary duplication.

## IV.    DEFENDANT'S BOILERPLATE AFFIRMATIVE DEFENSES FAIL TO MEET THE FACTUAL PLAUSIBILITY STANDARD, AND THUS SHOULD BE STRICKEN PURSUANT TO FED. R. CIV. P. 12(f).

In *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92 (2d Cir. 2019), the Second Circuit confirmed that "the plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense[.]" 918 F.3d at 98. Therefore, a defendant must "support [its] defenses with some factual allegations to make them plausible." *Id.* at 99. An affirmative defense that is not supported by sufficient allegations of fact is subject to a motion to strike under Rule 12(f). *See id.*, at 95, 99.

Here, Defendants' affirmative defenses numbers two, three and six contain nothing more than naked assertions devoid of any factual enhancement. Accordingly, these defenses should be stricken. *See GEOMC*, 918 F. 3d at 98-99; *see also Jefferies Strategic Investments, LLC v. Weiss,* No. 24-cv-4369, 2025 WL 786578, at *4 (S.D.N.Y. Mar. 12, 2025), citing *Brooklyn Union Gas Co. v. Exxon Mobil Corp.*, 478 F. Supp. 3d 417, 435 (E.D.N.Y. 2020) ("striking affirmative defenses where defendant failed to plead them with sufficient specificity to provide plaintiff notice") and *Trs. of the N.Y. City Dist. Council v. MCF Assocs.*, 530 F. Supp. 3d 460, 468 (S.D.N.Y. 2021) (same). As for Defendants' seventh affirmative defense, it too should be stricken because it is "not an affirmative defense, but rather a reservation of rights [to amend or supplement th[e] Answer and

affirmative defenses]." *Jefferies Strategic Investments,* 2025 WL 786578, at *4 (dismissing similar "reservation of rights" as an improper affirmative defense).

## CONCLUSION

Defendants' First Amended Answer with Counterclaims, like their original Answer, is ill-conceived ballast designed to be a counterweight to Plaintiff's well-pled allegations. It should be dismissed or stricken for the reasons set forth herein.

Moreover, because Defendants have already availed themselves of the opportunity to replead in response to Plaintiff's April 22, 2025 explanatory email painstakingly describing the defects associated with their initial pleading, their claims should be dismissed with prejudice. *See*, *e.g.*, *Williams v. Calderoni*, 2012 WL 691832, at *8 (S.D.N.Y. Mar. 1, 2012) ("Leave to amend would be futile because plaintiff has already had two bites at the apple and they have proven fruitless." (internal quotation marks omitted)), *aff'd sub nom.*, *Williams v. Schwartz*, 529 F. App'x 89 (2d Cir. 2013); *In re Refco Inc. Securities Litig.,* No. 08-cv-3065, 2012 WL 3126834, at *4 (S.D.N.Y. July 30, 2012) (Rakoff, J.), *aff'd sub nom. Krys v. Pigott*, 749 F.3d 117, 134 (2d Cir. 2014) ("We see no abuse of discretion in the district court's dismissal of the Amended Complaint's claims against appellees without leave to amend.")

For all of the foregoing reasons, Plaintiff respectfully requests that the Court strike or dismiss the Defendants' First, Third and Fourth Counterclaims as well as Affirmative Defenses Nos. Two, Three, Four, Six and Seven with prejudice.

Respectfully submitted,
**MANDELBAUM BARRETT PC**

Joel G. MacMull, Esq.
Arla D. Cahill, Esq.
3 Becker Farm Rd., Suite 105
Roseland, New Jersey 07068
973-736-4600
jmacmull@mblawfirm.com
acahill@mblawfirm.com

*Attorneys for Plaintiff Alexander Heid*

Dated: June 11, 2025